FILED

JUN 1 0 2005

LEONARD GREEN, Clerk

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 03-3498

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| ROGER TATE, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

1:02 cv 140

**BEFORE: SUTTON and COOK, Circuit Judges; and ALDRICH, District Judge.\***

**ANN ALDRICH, District Judge.** In the United States District Court for the Southern

District of Ohio, Tate pled guilty to possession of a counterfeit security in violation of 18 U.S.C. §

513(a) and to aiding and abetting his wife in the commission of that same offense. The district court

accepted his plea and sentenced him in accordance with his presentence report, and Tate appeals his

sentence and restitution order. The parties agree that Tate's base offense level was six and that he

properly received a two-level reduction for acceptance of responsibility under United States

Sentencing Guideline ("U.S.S.G.") § 3E1.1.

---

\* The Honorable Ann Aldrich, United States District Judge, Northern District of Ohio,
sitting by designation.

Tate challenges the district court's application of U.S.S.G. § 2B1.1, which adds offense levels for certain theft crimes based on the amount of loss attributable to the offense. The district court found a loss of $38,768; under U.S.S.G. § 2B1.1(a), a loss between $30,000 and $70,000 added six levels, yielding a final offense level of ten. Combined with Tate's criminal history, that subjected him to a guideline range of 24-30 months imprisonment. The district court sentenced Tate to thirty months in prison and three years of supervised release and ordered restitution of $4,848. If the district court had found a loss of $10,000 to $30,000, his offense level would have been eight instead of ten, and the resultant guidelines range would have been 18-24 months. First, Tate objects to the inclusion of a $6,700 "intended loss" for checks confiscated from him, his wife, and two relatives – checks that they never tried to cash. Second, Tate objects to the inclusion of $2,968.01 in charges made on a stolen credit card used by his wife. We find no error in the district court's loss calculation (and consequently, no error in its calculation of Tate's offense level).

Tate also challenges his custodial sentence under *Blakely v. Washington*, __ U.S. __, 124 S.Ct. 2531 (2004), contending that he has a Sixth Amendment right to have a jury determine the amount of loss beyond a reasonable doubt. This argument is foreclosed by *Booker v. United States*, __ U.S. __, 125 S.Ct. 738 (2005), which permits a district court judge to make such a factual finding so long as the Guidelines are not read to *require* the judge to increase the sentence based on that finding. *See United States v. Harris*, 397 F.3d 404, 411 (6th Cir. 2005) ("*Booker* teaches that there is no Sixth Amendment violation when a sentencing judge exercises genuine discretion within a clearly defined statutory range.") (citing *Booker*, 125 S.Ct. at 750 (Stevens, J., for the Court)). The Court accomplished this by excising 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. *See Harris*, 397 F.3d at 410 (citing *Booker*, 125 S.Ct. at 757 (Breyer, J., for the Court)).

We vacate Tate's custodial sentence, however, because it was imposed with the understanding that the guidelines were mandatory. *Booker* held that the Guidelines are merely advisory and that the district court has discretion to impose a reasonable sentence outside the Guidelines range. We remand for the district court to exercise that discretion.

Lastly, Tate challenges the $4,848 restitution order, contending that the proper amount is $1,800. Tate contends that the district court erred by including $2,968 in charges made on a stolen credit card registered under his wife's alias and used only by his wife. Tate is mistaken; under 18 U.S.C. § 3663(a)(2), a defendant convicted of "an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity" must make restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Tate pled guilty to aiding and abetting, which necessarily involves a "scheme" by two or more people, and the issuer of his wife's credit card was directly harmed by his aiding and abetting that scheme. Accordingly we affirm the restitution order, save the subtraction of $100 to correct a conceded error.[1]

## I. BACKGROUND

In August 2002 Tate and his wife Jeanette were arrested while attempting to buy goods at a clothing store in southern Ohio with a $100 counterfeit travelers check. Police confiscated false identification cards in the names of "Eric Shelly" and "Michelle Tice." A search of the Tates' vehicle uncovered forty-four more counterfeit $100 travelers checks and a stolen credit card also in

---

[1]    It is undisputed that the district court erred in ordering restitution for the $100 travelers check that Tate was prevented from cashing when he was arrested.

the name of Michelle Tice. The Presentence Report states that the credit card was used by Mrs. Tate

for purchases totaling $2,968. (J.A. at 105.)

During the Secret Service investigation, and in the plea agreement, Tate admitted that he and

his wife knowingly used $9,000 in counterfeit checks in the past and knowingly possessed $8,000

in counterfeit checks on their trip to Cincinnati (using $1,100 in stores and giving others to relatives

for their use). (J.A. at 17, 21, 104-105.) In addition to the checks presented in Cincinnati, VISA

reported receiving $27,000 in counterfeit checks in the name of "Eric Shelly" and/or "Michelle Tice"

between January and August 2002. (J.A. at 105.) The signatures on all the checks were similar.


## II. STANDARD OF REVIEW

We review the sentencing court's factual findings for clear error and its legal determinations

*de novo*. *See United States v. Wiant*, 314 F.3d 826, 828 (6th Cir.) (citations omitted), *cert. denied*,

538 U.S. 970 (2003). The determination of what types of loss can constitute the loss attributable to

Tate's offense for purposes of his offense level under U.S.S.G. § 2B1.1(b)(1) is a question of law

subject to *de novo* review. *See United States v. Brown*, 151 F.3d 476, 489 (6th Cir. 1998).[2]

---

[2]     When Tate filed this appeal, Title 18 U.S.C. § 3742(e) provided: "Upon review of
the record, the court of appeals shall determine whether the sentence (1) was imposed
in violation of law; [or] (2) was imposed as a result of an incorrect application of the
sentencing guidelines...." In *Booker*, however, the Supreme Court excised section
3742(e) from the Sentencing Reform Act of 1984 ("SRA"). *See United States v.*
*Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) (citing *Booker*, 125 S.Ct. at 738, 765).

"Having severed and excised the SRA's standards governing review of sentences, the
Supreme Court replaced them with review for unreasonableness. *United States v.*
*Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (citing *Booker*, 125 S.Ct. at 765).
"Therefore, when a defendant challenges a district court's sentencing determination,
we are instructed to determine 'whether [the] sentence is unreasonable.'" *Webb*, 403
F.3d at 383 (citing *Booker*, 125 S.Ct. at 766).

We uphold restitution awards unless the district court abused its discretion. *See United States v. Hart*, 70 F.3d 854, 862 (6th Cir. 1995). We uphold the district court's finding as to the amount of restitution unless it is "outside the universe of acceptable computations." *United States v. Fleming*, 128 F.3d 285, 287 (6th Cir. 1997) (citations omitted).

### III. ANALYSIS: LOSS FOR PURPOSES OF CUSTODIAL SENTENCE

**A.    Calculating Loss Under U.S.S.G. § 2B1.1**

United States Sentencing Guideline § 2B1.1 governs "Offenses Involving Altered or Counterfeit Instruments" other than federal securities. Subsection 2B1.1(b)(1) increases the offense level based on the amount of loss attributable to the offense, as follows:

| Loss (apply the greatest) | | Increase in Level |
|---|---|---|
| (A) | $5,000 or less | no increase |
| (B) | More than $5,000 | add 2 |
| (C) | More than $10,000 | add 4 |
| (D) | More than $30,000 | add 6 .... |

The Commentary to section 2B1.1 further provides, in pertinent part:[3]

---

[3]    We have previously held that because the Sentencing Commission's Commentary constitutes an agency's interpretations of its own regulations, "it is binding on the federal courts unless it is unconstitutional, violates the terms of a federal statute, or is plainly inconsistent with the terms of the Guideline being interpreted." *United States v. Lucas*, 99 F.3d 1290, 1294 (6th Cir. 1996) (citation omitted).

Although the Guidelines are no longer mandatory, we still look to the Commentary for guidance. *See United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005); *United States v. Bivens*, Nos. 03-6667 and 04-5044, __ Fed. Appx. __, __, 2005 WL 820705, at *7 (6th Cir. Apr. 8, 2005) (standard for determining whether defendant was a minor participant in conspiracy); *United States v. Kavo*, No. 04-1194, __ Fed. Appx. __, __, 2005 WL 783351, at *2 (6th Cir. Apr. 1, 2005) (definition of term "abducted").

Our sister Circuits' *post-Booker* decisions also continue to look to the Commentary. *See, e.g., United States v. Wallace*, No. 04-1265, __ F.3d __, __, 2005 WL 1200892,

Loss Under Subsection (b)(1)   * * *

(A)   General Rule – Subject to the exclusions in subdivision (D) [interest, late fees, cost of investigation and prosecution], *loss is the greater of actual loss or intended loss.*

      (i)   Actual Loss – "Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.

      *(ii)   Intended Loss – "Intended loss" (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).*
* * *

(C)   Estimation of Loss. – The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference. *See* 18 U.S.C. § 3742(e) and (f).

U.S.S.G. § 2B1.1 commentary, App. Note 2 (emphasis added).

## B.   The District Court Did Not Err in Calculating the Amount of Loss

The district court found an *actual* loss of $31,978, consisting of three components:

| | |
|---|---|
| $28,100 | Checks cashed by Tate and/or his wife between January and August 2002 |
| $ 2,968 | Charges made on the credit card bearing Tate's wife's alias |
| $ 100 | Check that the Tates were trying to cash when they were apprehended. |

Tate concedes that the actual loss includes $28,100 in checks that they actually negotiated. Conversely, the government concedes that actual loss cannot include the $100 check which the Tates were prevented from cashing. Thus the only disputed component of actual loss is the $2,968 charged on the stolen credit card. But we need not decide whether that amount could properly be included

---

at *1-2 (8th Cir. May 23, 2005); *United States v. Yazzie*, No. 04-2152, __ F.3d __, __, 2005 WL 1189822, at *6 (10th Cir. May 20, 2005) (*en banc*) (Briscoe, J., concurring).

in actual loss for purposes of U.S.S.G. § 2B1.1. It is irrelevant whether the *actual* loss alone

exceeded the $30,000 threshold, because the *intended* loss did.

"The total loss amount may include both actual and intended losses where the fraud involved

both successful and ultimately unsuccessful attempts." *United States v. Gross*, No. 02-1981, 84 Fed.

Appx. 531, 533, 2003 WL 22976583, at *2 (6th Cir. Dec. 5, 2003) (citing *United States v. Brown*,

151 F.3d 476, 489-90 (6th Cir. 1998)). Accordingly, "if an intended loss that the defendant was

attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."

*United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 318 (4th Cir. 2000) (citing *Brown*, 151

F.3d 476). *See, e.g. United States v. DeSantis*, 237 F.3d 607, 612 (6th Cir. 2001) ("a defendant in

*Brown* was held responsible for *not* $152,960.61 in actual losses *but* $511,023.61 in 'intended'

losses....") (emphasis added).[4]

We turn then to the calculation of intended loss. The intended loss necessarily includes all

actual losses, because actual loss is merely a loss that Tate intended to inflict and *did* inflict.[5] *See*

---

[4]    *See also United States v. Swanson*, 360 F.3d 1155, 1168-69 (10th Cir. Jan. 26, 2004) (where actual loss from check kiting scheme was zero and intended loss was $522,064, district court properly calculated total loss at $522,064); *United States v. Himler*, 355 F.3d 735, 740-41 (3d Cir. 2004) (where actual loss from scheme was zero but intended loss was $195,000 face value of counterfeit checks, district court properly placed total loss in $120,000 to $200,000 range).

[5]    "It is theoretically possible for a person not to intend a loss that occurs. A defendant, however, will be hard-pressed to convince a sentencing court that such a loss was not intended, especially if the defendant somehow benefits from the loss." Thomas W. Hutchison *et al.*, Federal Sentencing Law & Practice § 2F1.1 n.57 (2005). It would strain credulity to suggest that Tate did not intend the losses that he actually caused the merchants by negotiating travelers checks that he knew to be counterfeit. *Cf. United States v. Angel*, No. 95-1327, 77 F.3d 483, 1996 WL 67928, at *3 (6th Cir. Feb. 15, 1996) ("in cases requiring a determination of intent, a jury may conclude that a defendant intended the natural and probable consequences of her actions.") (citations omitted).

*United States v. Carboni*, 204 F.3d 39, 47 (2d Cir. 2000) ("Logically, intended loss must include

both the amount the victim actually lost and any additional amount that the perpetrator intended the

victim to lose."); *cf.* Thomas W .Hutchison *et al.*, Federal Sentencing Law & Practice § 2F1.1 n.57

(2005) (under former U.S.S.G. § 2F1.1, which was consolidated into U.S.S.G. § 2B1.1, "Intended

loss could have included loss that had already been inflicted (actual loss).").

Tate has conceded that his offenses caused $28,100 in actual loss (the amount represented

by the checks that he and/or his wife successfully negotiated between January and August 2002).

In addition to this actual loss, the district court counted the following amounts as intended loss:

$4,400 in unused travelers checks that were seized from Tate and his wife and $2,300 in unused

travelers checks that were seized from Tate's relatives (who had obtained them from the Tates).

Tate contends that the $6,700 in unused checks cannot be counted under *United States v.*

*Watkins*, 994 F.2d 1192 (6th Cir. 1993), which establishes two surviving requirements needed to

include an amount in the loss attributable to an offense. First, the defendant must have intended the

loss; second, "the defendant must have completed or been about to complete but for interruption, all

of the acts necessary to bring about the loss." *Id.* at 1196. Under this standard, the district court

properly counted as intended loss the $4,400 in unused counterfeit checks possessed by the Tates.

Nothing in the record supports the notion that Tate fabricated those checks but had no design

to negotiate them as he and his wife negotiated all the others throughout the year. *Cf. United States*

*v. Jeffers*, No. 04-4018, 108 Fed. Appx. 804, 805-806, 2004 WL 2072322, at *1 (4th Cir. Sept. 17,

2004) (notwithstanding that defendant returned $215,000 teller check to bank, district court did not

err by counting it as intended loss, because theft of the check was "part of the same course of

conduct as his fraudulent loans" which did cause loss to the bank). It was reasonable to infer that

the Tates intended to continue, and would have continued negotiating counterfeit checks in the same manner if they had not been apprehended (or as *Watkins* puts it, "interrupted"). *See United States v. Rennicke*, Nos. 04-3486 and 04-3487, __ Fed. Appx. __, 2005 WL 1140310, at * (7th Cir. May 1, 2005) (district court properly determined total loss by using intended loss rather than the lower actual loss figure "under the assumption that they would not have discontinued their scheme until caught.") (citing *United States v. Rettenberger*, 344 F.3d 702, 708-709 (7th Cir. 2003)).

Adding that $4,400 to the $28,100 in conceded actual loss yields an intended loss of $32,500. Because total loss is the larger of actual loss or intended loss, *see* U.S.S.G. § 2B1.1 App. Note 2, the intended loss of $32,500 is the total loss. That alone yields a loss between $30,000 and $70,000, triggering the addition of six offense levels under U.S.S.G. § 2B.1(b)(1)(D). Thus we need not consider whether the $2,300 in unused checks found in the possession of the Tates' relatives also could be counted as intended loss attributable to Tate. Likewise, we need not consider whether the $2,968 in charges on the stolen credit card could properly be counted as intended loss.

In short, the district court did not err in finding that the total loss attributable to Tate's offenses was sufficient to add six offense levels, for a total offense level of ten and a Guideline range of 24-30 months imprisonment.

## IV. ANALYSIS: LOSS FOR PURPOSES OF RESTITUTION

The district court's $4,868 restitution order consisted of three components:

| | |
|---|---|
| Charges made by Tate's wife on stolen credit card | $2,968 |
| Amounts not contested by Tate | $1,800 |
| Check that the Tates were trying to cash when they were arrested | $ 100 |

The government states, "We must ... concede that the defendant was ordered, in error, to make restitution in the amount of $100.00 to American Eagle. [T]he transaction was terminated before either the defendant or his co-defendant could defraud yet another victim." Government's Brief at 17. Thus the only dispute is whether the district court erred in counting the charges that Tate's wife made on the stolen credit card as a loss for purposes of *his* restitution order.

U.S.S.G. § 5E1.1 provides, in pertinent part,

    (a)    In the case of an identifiable victim, the court shall –

        (1)    enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. ... § 3663, or § 3663A ....

*See also* 18 U.S.C. § 3556 ("The court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663. * * * "); 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title, ... may order ... that the defendant make restitution to any victim of such offense...."). The question is whether the issuer of the stolen credit card is Tate's "victim" for purposes of restitution. We answer that question in the affirmative.

In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court interpreted the Victim and Witness Protection Act of 1982 ("VWPA") and reversed an order that required the defendant to pay restitution for counts other than the counts of conviction. The Court held that "the language and structure of the Act make plain Congress'[s] intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Id.* at 420.

Shortly after *Hughey*, however, Congress amended the VWPA to broaden the definition of victim. The VWPA now provides that for purposes of restitution, an offender's victims include:

a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, *in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity*, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2) (emphasis added). For defendants sentenced after the effective date of the amendment, we inquire whether any offense of conviction had as an element "a scheme, conspiracy or pattern of criminal conduct." If so, we uphold restitution orders that go beyond the conduct directly underlying the offenses of conviction. *See, e.g., United States v. Jackson*, Nos. 97-5977 and 97-6014, 149 F.3d 1185, 1998 WL 344041 (6th Cir. May 28, 1998) (pled guilty to conspiracy).

In *United States v. Clark*, 957 F.2d 248 (6th Cir. 1992), the defendant was convicted of theft of one vehicle and conversion with the intent to steal another. The defendant stole two other vehicles so that he would not have to use his own car to get to the scene of the thefts for which he was convicted. *See id.* at 249-50. The district court ordered restitution not only for the two vehicles underlying the conviction, but also for the third and fourth vehicles. *See id.* at 252-53. On appeal, the government emphasized that the defendant stole the third and fourth vehicles in the course of his theft and conversion of the first two. The government argued that "the evidence, taken in its entirety, indicated that [the defendant] was involved in a scheme, conspiracy or pattern of stealing vehicles and, therefore, that the 'victims' entitled to restitution include all those whose vehicles were stolen during the course of [his] activities." *Id.* at 253. We rejected the government's argument and held,

> Section 3663(a)(2) by its terms extends only to those crimes where a scheme, conspiracy, or pattern of criminal activity *is an element of the offense* [of conviction].
>
> * * *
>
> The indictment under which [the defendant] was charged and convicted was limited to the FBI Blazer and Cadillac and was brought solely under 18 U.S.C. § 641 [theft of public money, property or records]. That section, however, does not include a scheme, conspiracy, or pattern of criminal conduct as an element of the offense. Therefore, the FBI was the only 'victim' entitled to restitution under the VWPA. That Clark may have been involved in a

-11-

scheme or pattern of stealing vehicles is, we believe, irrelevant; Clark was neither charged with nor convicted of such scheme or pattern, but merely with simple theft.

*Id.* (emphasis in original).

Here, by contrast, Tate pled guilty not just to the counterfeit security offense, but also to aiding and abetting his wife in committing the same offense. Tate's aiding and abetting his wife in their negotiation of dozens of checks they knew to be counterfeit, over many months, involves a "scheme ... or pattern of criminal activity" as required by 18 U.S.C. § 3663(a)(2).[6] Moreover, it is reasonable to infer that the stolen credit card was used for the mutual benefit of the Tates and could have furthered their crime spree by defraying the cost of lodging, transportation, clothing to alter

---

[6]    For purposes of restitution, 18 U.S.C. § 3663(a)(2) defines victim to include, "in the case of an offense that involves as an element a scheme, *conspiracy*, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Emphasis added. In counting the credit card issuer as Tate's victim, we omit the word "conspiracy." This is because conspiracy is not a necessary element of Tate's aiding and abetting offense.

Aiding and abetting necessarily involves joint activity between two or more people (a "scheme"), *see United States v. Rodriguez*, Nos. 88-1125 and 88-1127, 878 F.2d 387, 1989 WL 69934, at *5 (9th Cir. June 23, 1989), but it does not necessarily involve a "conspiracy." *See United States v. Carson*, 9 F.3d 576, 586 (7th Cir. 1993) (unlike conspiracy, "aiding and abetting does not require proof of an agreement to break the law. Rather it requires knowledge of the crime being aided and abetted, a desire to help the activity succeed, and some act of helping.") (citation omitted). "[C]onspiracy ... involves the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding abetting." *United States v. Abreu*, 962 F.2d 1425, 1434 (10th Cir. 1992) (citing *United States v. Townes*, 512 F.2d 1057, 1058 (6th Cir. 1975) and published decisions from Third, Fourth and Fifth Circuits), *vac'd o.g.*, 508 U.S. 935 (1993). *See, e.g., United States v. Zafiro*, 945 F.2d 881, 884 (7th Cir. 1991) (someone who warns members of drug ring of police raid, without previous dealings with ring, would be aider and abettor but not a conspirator) (citation omitted), *aff'd*, 506 U.S. 534 (1993).

-12-

their appearance, etc. Thus it was not error to hold Tate liable for the losses inflicted on the credit

card issuer in the course of the joint criminal scheme perpetrated by him and his wife.[7]

## V. ANALYSIS: THE IMPACT OF *BOOKER*

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther

than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

In *Blakely v. Washington*, 524 U.S. __, 124 S.Ct. 2531 (2004), the Supreme Court elaborated that

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence [a judge may
> impose solely on the basis of the facts reflected in the jury verdict or admitted by the
> defendant. * * *  In other words, the relevant "statutory maximum" is not the maximum
> sentence a judge may impose after finding additional facts, but the maximum he may impose
> *without* any additional findings.  When a judge inflicts punishment that the jury's verdict
> alone does not allow, the jury has not found all the facts "which the law makes essential to
> the punishment," and the judge exceeds his proper authority.

---

[7]    *United States v. Comer*, 93 F.3d 1271 (6th Cir. 1996) does not preclude this holding.
That panel did remark that although a defendant had been charged with aiding and
abetting, § 3663(a)(2)'s expanded definition of victim did not apply.  The panel
stated, "*Comer was charged* ... with violations of 18 U.S.C. §§ ... 2 and was not
charged with any crime that required proof of a scheme, conspiracy, or pattern of
criminal activity." *Id.* at 1275 n.1.

That statement was mere *dicta*, however, because it was not necessary to the
decision. The panel identified a different basis for vacating the restitution order: "We
vacate Comer's sentence and remand for resentencing because the district court erred
in ... imposing a restitution order based in part on uncharged conduct and charges of
which the defendant was acquitted." *Id.* at 1274 (citation omitted).  We are not
bound by *dicta* in a previous panel opinion. *See United States v. Burroughs*, 5 F.3d
192, 194 (6th Cir. 1993) (citation omitted).

Moreover, *Comer* is readily distinguishable from this case. The restitution order
against Tate was based only on conduct for which was convicted – possessing
counterfeit checks and aiding and abetting – not on uncharged or acquitted conduct.

*Blakely*, 124 S.Ct. at 2357 (internal citations omitted) (emphasis in original).

Then, in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005), the Supreme Court held

that *Blakely*'s reading of the Sixth Amendment right to a jury trial affects the Guidelines. More

specifically, the Supreme Court

> held that the mandatory federal sentencing guidelines violated the Sixth Amendment by
> *requiring* judges to enhance the sentences of defendants based on facts not found by a jury
> or admitted by the defendant. To remedy this problem, the Court excised from the
> Sentencing Act the provisions making the Guidelines mandatory. *Id.* at 764. *Booker* then
> instructed reviewing courts to apply its Sixth Amendment holding and its remedial
> interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769.

*United States v. Israel*, No. 03-3298, __ Fed. Appx. __, 2005 WL 1027563, at *6 (6th Cir. May 3,

2005) (emphasis added).

Here, Tate's offense level was increased – and hence his Guideline sentencing range was

increased by six months – based on facts found by the district judge, namely the amount of total loss

attributable to his offenses. Since Tate failed to make this Sixth Amendment objection at sentencing,

however, we conduct only plain error review to determine if he must be re-sentenced. *See Israel*,

2005 WL 1027563 at *6. Re-sentencing is not necessary unless there is (1) error (2) that is plain and

(3) that affects Tate's substantial rights.[8] *See id.* (citing *United States v. Oliver*, 397 F.3d 369, 378

(6th Cir. 2005)). If these conditions are met, we may exercise our discretion to notice the forfeited

error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

---

[8]     "[W]e ordinarily require a showing, beyond a reasonable doubt, that an error affected
substantial rights...." *United States v. Moreno-Delgado*, Nos. 03-6656 and 03-6657,
__ Fed. Appx. __, 2005 WL 873412, at *3 (6th Cir. Apr. 18, 2005). However,
"where, as here, such a showing would be exceedingly difficult, we will assume
prejudice absent evidence to the contrary." *Id.* (citing *Barnett*, 398 F.3d at 526-30).

Tate's sentence in violation of the Sixth Amendment constitutes error that is plain. "Moreover, according to this circuit's precedent in *Oliver*, a sentence enhancement based on judge-found facts under a mandatory guidelines system necessarily affects [Tate]'s substantial rights." *Israel*, 2005 WL 1027563 at *7 (citing *Oliver*, 397 F.3d at 379-80). Furthermore, "*Oliver* dictates that any sentencing error that leads to a violation of the Sixth Amendment by imposing a more severe sentence than is supported by the jury verdict automatically diminishes the integrity and reputation of the judicial system." *Israel*, 2005 WL 1027563 at *7 (citing *Oliver*, 397 F.3d at 380).

Lastly, we recently held that "in light of the Supreme Court's remedial holding in *Booker*, a sentencing court's 'failure to treat the sentencing guidelines as advisory' constitutes plain error." *United States v. Hudson*, 405 F.3d 425, 444 (6th Cir. 2005) (quoting *United States v. Barnett*, 398 F.3d 516, 527 (6th Cir. 2005)). Under *Barnett*, we presume that such an error affected a defendant's substantial rights. *See Hudson*, 405 F.3d at 444 (citing *Barnett*, 398 F.3d at 527-29).

As we were careful to observe in *Barnett*, we do not categorically rule out the possibility that there may be a case "where the evidence in the record will be sufficient to rebut the presumption of prejudice." *Barnett*, 398 F.3d at 529. Thus, we must determine whether "the trial record contains clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory guidelines range." *Barnett*, 398 F.3d at 529 (citing *United States v. Crosby*, 397 F.3d 103, 118 (2d Cir. 2005)). The government has not identified any such "clear and specific evidence" that would rebut the presumption of prejudice.

Therefore, Tate's custodial sentence must be vacated and his case remanded for a new determination of his terms of imprisonment and supervised release. *See United States v. Yagar*, 404

-15-

F.3d 967 (6th Cir. 2005) (remanding for resentencing on mail theft conviction where district court

believed that it was required to enhance sentence based on its finding that loss exceeded $10,000).


## VI. CONCLUSION

For the foregoing reasons, we affirm the determination that an intended loss of between

$30,000 and $70,000 was attributable to Tate's offenses for purposes of his custodial sentence.

Consequently we also affirm the addition of six offense levels under U.S.S.G. § 2B1.1(b)(1),

yielding a total offense level of ten, and the guidelines again call for 24-30 months imprisonment.

Under *Booker*, however, that range is merely advisory, and the district court has discretion

to impose a reasonable sentence outside the range under appropriate circumstances.  Therefore we

vacate Tate's custodial sentence and remand for the district court to exercise its *Booker* discretion.

In doing so, however, the district court should still *consider* the recommended Guidelines sentence.

*See United States v. McDaniel*, 398 F.3d 540, 550-51 (6th Cir. 2005) (citing *Booker*, 125 S.Ct. at 764,

and 18 U.S.C. § 3553(a)), *reh'g denied* (6th Cir. May 13, 2005); *see, e.g., United States v. Phelps*,

No. 1:04CR41, __ F. Supp. 2d __, 2005 WL 984156 (E.D. Tenn. Apr. 1, 2005).

Lastly, we direct the district court to reduce Tate's restitution obligation from $4,848 to

$4,748 to rectify the erroneous inclusion of a $100 check that was never cashed.